UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LEONARD C. JEFFERSON, | : | |
|               Plaintiff, | : | |
| | : | |
|         v. | : | C.A. No. 17-439WES |
| | : | |
| IMAM FARID ANSARI, Islamic | : | |
| Chaplain at Rhode Island's Department | : | |
| of Corrections [RIDOC]; BARRY | : | |
| WEINER, Assistant Director of | : | |
| Rehabilitative Services at RIDOC; | : | |
| JEFFREY ACETO, then-Deputy Warden | : | |
| now-Warden of RIDOC's Maximum | : | |
| Security Unit; MATTHEW KETTLE, | : | |
| then-Warden of Maximum Security | : | |
| now-Assistant Director of Operations at | : | |
| RIDOC; ASHBEL T. WALL, | : | |
| then-Director of RIDOC; and PATRICIA | : | |
| COYNE FAGUE, Acting-Director | : | |
| of RIDOC, | : | |
|               Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      This § 1983 case, brought *pro se*[1] by a prisoner serving a life-without-parole sentence at the Adult Correctional Institutions ("ACI"), has had a long history before the Court. It began as a sprawling sixty-five-page, 452-paragraph, nine-Count "Verified Complaint with Jury Demand," most of which was dismissed in August 2018, ECF No. 27, leaving only Plaintiff's First Amendment Free Exercise claim that he has been denied his right freely to practice the Islamic religion. Jefferson v. Raimondo, C.A. No. 17-439 WES, 2018 WL 3873233, at *3, *18 (D.R.I. Aug. 15, 2018) ("Jefferson v. Raimondo"). As directed by the Court, Plaintiff filed a

---

[1] A complaint brought by a *pro se* plaintiff should be liberally construed and held to a lower standard of pleading than is applied to those prepared by lawyers. Tucker v. Wall, No. CA 07-406 ML, 2010 WL 322155, at *8 (D.R.I. Jan. 27, 2010). I have deployed this standard in reviewing Plaintiff's pleading.

First Amended Complaint focused on his desire to attend weekly Jumu'ah services and to engage in certain rituals of Ramadaan and Eid in a congregate setting. ECF No. 32 ("FAC").

The FAC seeks monetary damages for the deprivation of access to these religious practices, as well as injunctive relief. It names various senior officials of Rhode Island Department of Corrections ("RIDOC"). With respect to the claim for money damages, Defendants Imam Farid Ansari[2] (the ACI Islamic chaplain), Barry Weiner (Assistant Director of Rehabilitative Services) and Warden Jeffrey Aceto are sued in their individual capacities. With respect to the claim for injunctive relief, the FAC names the former Warden and current Assistant Director Matthew Kettle, and the former and current RIDOC Directors, A.T. Wall and Patricia Coyne-Fague, who are sued in their official capacities. The FAC's request for an injunction asks the Court to order the implementation of a protocol to allow Muslim prisoners to attend inmate-led weekly Jumu'ah services and to practice specific rituals associated with Ramadaan and Eid. Plaintiff supported the FAC's request for an injunction with a motion for preliminary injunction filed on January 7, 2019. ECF No. 41.

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6). ECF No. 37. The motion was referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B).

**I.    BACKGROUND**[3]

---

[2] Imam Ansari was not mentioned in the original complaint; when Plaintiff filed the FAC, he named Imam Ansari as the lead defendant, but did not ask to have him served. Accordingly, as far as the Court can tell, he has never been joined in the case.

[3] Unless otherwise specifically noted, these facts are drawn from the FAC and are taken as true for the purpose of this motion.

Invoking the Free Exercise Clause of the First Amendment,[4] U.S. Const. amend. I, the FAC alleges that RIDOC unreasonably burdened the sincerely held religious beliefs of Plaintiff, a Muslim prisoner, during a period of several months after the ACI unexpectedly lost its Imam and was trying to bring a new Imam on board, which finally happened in May 2017. FAC ¶¶ 17-26. Then, after Imam Ansari became the ACI's Muslim chaplain, the FAC alleges that he failed to conduct services every week[5] in Plaintiff's area of the ACI because he was leading services in other areas, that RIDOC officials continued refusing to permit inmate-led services to be conducted when the Imam was unavailable, and that RIDOC officials prohibited congregate performance of "Salatul Maghrib" (the ritual sunset prayer with prostrations) during 2018 Ramadaan (although Muslim prisoners were allowed to pray at the dining table and to have special fast-breaking meals in their cells). Id. ¶¶ 27-82.

While the focus of this report and recommendation is on the FAC, the Court cannot ignore that, over the period since the religious matters raised in the FAC have been in issue, based on guidance from the U.S. Supreme Court, e.g., Holt v. Hobbs, 574 U.S. 352, 859 (2015), this Court has issued a number of decisions addressing religious practice at the ACI. See, e.g., Jefferson v. Wall, 2017 WL 6459447, at *1; Harris v. Wall, 217 F. Supp. 3d 541, 562 (D.R.I. 2016); Vangel v. Aul, C.A. No. 15-43L, 2015 WL 5714850, at *6 (D.R.I. June 19, 2015), adopted, C.A. No. 15-43L, 2015 WL 5714855 (D.R.I. Sept. 29, 2015). As the law has evolved, RIDOC has been appropriately responsive to these decisions, calibrating its rules and protocols in recognition that, while "the fact of incarceration and the valid penological objectives of

---

[4] Unlike his earlier religious freedom case, Plaintiff does not rely on the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. See Jefferson v. Wall, C.A. No. 16-652 WES, 2017 WL 6459447, at *1 (D.R.I. Dec. 18, 2017) ("Jefferson v. Wall").

[5] The FAC appears to allege that the Imam conducted weekly Jumu'ah services where Plaintiff was confined approximately 30% of the time in general and 50% of the time during 2018 Ramadaan. FAC ¶¶ 29-31.

deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates," DeHart v. Horn, 227 F.3d 47, 50-51 (3d Cir. 2000) (citing Pell v. Procunier, 417 U.S. 817, 822-23 (1974)), "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). For example, in another case brought by Plaintiff, Jefferson v. Wall, the Court noted RIDOC's adoption in late 2017 of a new operating procedure permitting the wearing of the kufi by Muslim prisoners; based on this policy change, Plaintiff's motion seeking a preliminary injunction in Jefferson v. Wall was denied. 2017 WL 6459447, at * 1-2.

Plaintiff filed the FAC in September 2018, a little over three months after Imam Ansari began as the new ACI Muslim chaplain. FAC ¶ 3. Immediately after he started, and despite Plaintiff's complaints, the Imam told Plaintiff that he could not lead Jumu'ah services weekly because of his duties in other parts of the ACI. Id. ¶ 28. After Plaintiff submitted the FAC, in January 2019, he filed a motion for preliminary injunction, which asked for an interim order addressing the rituals raised in the FAC, including weekly Jumu'ah services and 2019 Ramadaan and Eid congregate rituals. ECF No. 41. However, less than two months later (during which period, no action was taken by the Court), on February 21, 2019, Plaintiff advised the Court of his desire to withdraw the motion for preliminary injunction. ECF No. 48. His representation to the Court is material:

> Imam Farid Ansari has recruited community religious volunteers to conduct weekly Jumu'ah Prayer Services, and it appears that the Imam is working to create a 2019-Ramadaan program which includes the observance of all ritual acts of worship which Plaintiff sought via his motion for a preliminary injunction.

Id. at 1. In this filing, Plaintiff also represented that he would resubmit the motion "in the event that RIDOC prohibits Plaintiff from performing all of the traditional ritual acts worship, during

4

the 2019 observance of Ramadaan, that have been observed by prisoners for decades in other prison systems." Id. Almost eight months have passed, yet no motion has been resubmitted. In reliance on Plaintiff's representations, on August 28, 2019, the Court denied the preliminary injunction motion as moot.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss the FAC focuses on its factual sufficiency. Citing the Supreme Court's canonical holding in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), they argue that the FAC lacks factual allegations (as opposed to legal conclusions) sufficient to state a plausible claim of a First Amendment deprivation because it fails to specify a religious practice Plaintiff was deprived of "unnecessarily and for no legitimate penological reason," FAC ¶ 48; to the contrary, the FAC confirms that Plaintiff was broadly afforded the opportunity to exercise his faith, as the Free Exercise Clause of the First Amendment requires. Hudson v. Spencer, No. 15-2323, 2018 WL 2046094, at *3 (1st Cir. Jan. 23, 2018). Defendants point out that the FAC recites RIDOC's many accommodations to Islamic religious practice, including: Defendant Weiner's active and ultimately successful search for a new Imam, FAC ¶¶ 20, 25, 29-30; Defendant Imam Ansari's willingness to listen to Plaintiff's religious concerns, id. ¶¶ 26-28; the Imam's challenge, with scarce resources, of balancing the need for services at Maximum Security with the needs of inmates in other areas of the ACI, id. ¶¶ 28, 31; RIDOC's reliance on the Imam's religious interpretation of Ramadaan rituals in determining its approach in 2018, id. ¶ 63; and Defendant Aceto's communications reminding Plaintiff of his right during Ramadaan to pray at the dining table and take a special meal in his cell, id. ¶¶ 23, 50.

Otherwise, as Defendants point out, the FAC is conclusory, replete with statements such as: "Defendants . . . unnecessarily deprived Plaintiff of the opportunity to attend weekly Jumu'ah

5

Prayer Services . . . by acting in manners which substantially burdened (to the extent of extinguishing) Plaintiff's Free Exercise right," id. ¶ 90; "Defendants . . . unnecessarily deprived Plaintiff of the opportunity to perform the Iftar . . . ritual of Ramadaan in 2018 . . . in violation of Plaintiff's free exercise rights," id. ¶ 101; and "Defendants . . . acted intentionally and with callous disregard for Plaintiff's clearly established constitutional rights," id. ¶¶ 91, 102.

Based on these arguments, Defendants ask the Court to dismiss the FAC pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6).

Plaintiff's opposition to the motion to dismiss emphasizes the Court's ruling on Defendants' first motion to dismiss in Jefferson v. Raimondo. In that decision, the Court found that Plaintiff's First Amendment claim – that RIDOC's prohibition on inmate-led services had resulted in no services at all after the former Imam departed – had "enough to state a claim." Id. at *15. Plaintiff contends that the FAC is simply a more detailed restatement of the same claim and asks the Court not to reverse itself. This argument has superficial appeal but suffers from two potential flaws.

First and most importantly, the original complaint and the FAC have material differences. In the 2017 pleading, Plaintiff alleged that RIDOC was still prohibiting all wearing of the kufi and had implemented a "de fact[o] 'Muslim Ban,'" with Muslim services terminated indefinitely because of the former Imam's departure. ECF No. 1 ¶¶ 164, 173-74, 397. Based on these facts, the original complaint permitted the inference of institutional indifference to the religious needs of Muslim prisoners. The original complaint did not reveal that Imam Ansari had actually started in May 2017 or that he had been in communication with Plaintiff about his religious concerns; indeed, the on-boarding of the new Imam is not mentioned in the original complaint at all.

By contrast, the FAC alleges that the new Imam came on board as Defendant Weiner had assured Plaintiff he would and that, upon his arrival, the Imam and RIDOC officials were in active dialogue with Plaintiff about his religious concerns in an effort to balance Plaintiff's right to worship with institutional considerations. And, as a result of Plaintiff's candor in making the February 2019 representation to the Court, it is now clear that the Imam's efforts to serve the needs of Muslim prisoners ultimately was so successful as to resolve all of the religious concerns Plaintiff had raised in the FAC. In short, the original complaint, on one hand, and the FAC coupled with Plaintiff's subsequent representation to this Court, on the other, paint very different portraits of RIDOC's efforts to afford Plaintiff the opportunity to practice his faith.

Second, the Court can and should change its mind if the first decision was wrong. Suboh v. Borgioli, 298 F. Supp. 2d 192, 206 (D. Mass. 2004) (court expresses deep regret that judicial error compounded expense and delay visited on litigants in case; "[n]evertheless, we live under 'the rule of law, and the just application of the law to the facts of the case lies at the very heart and core of our civilization'"). Thus, while I should not whimsically zig or zag in a different direction, I am not bound by the holding of Jefferson v. Raimondo if more careful and focused reflection reveals that it was mistaken. See Schultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984) (law of the case doctrine merely "directs a court's discretion, it does not limit the tribunal's power . . . [and it] is not a barrier to correction of judicial error").

## III.    STANDARD OF REVIEW

To avoid a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege a plausible entitlement to relief that gives the defendant fair notice of the claim and the grounds on which it rests. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). The plausibility inquiry requires the court to distinguish "the

complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). This two-pronged approach begins by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as . . . fact[ ]'" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 1949-50 (quoting Twombly, 550 U.S. at 555). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The Court must then determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The court "may consider not only the complaint but also 'facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.'" Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009). In doing so, the complaint should be read holistically with a heavy dose of common sense. Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283-84 (1st Cir. 2014). "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 567 (D.R.I. 1996).

    Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive scrutiny under Fed. R. Civ. P. 8(a), a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678. It "should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores

Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Although Fed. R. Civ. P. 8(a) allows flexibility in pleading, it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

## IV. LAW AND ANALYSIS

Both Counts of the FAC implicate the Free Exercise clause of the First Amendment, which "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "The Supreme Court has made it clear that 'prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" Siddiqi v. Leak, 880 F.2d 904, 908-09 (7th Cir. 1989) (citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)). As noted above, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment," Cruz, 405 U.S. at 322 n.2, while at the same time, "[a] prison regulation which restricts an inmate's First Amendment rights is permissible if it is 'reasonably related to legitimate penological interests.'" Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Four factors are relevant in making the First Amendment determination: "(1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation." Hudson v. Spencer, No. 15-2323, 2018 WL 2046094, at *3 (1st Cir. Jan. 23, 2018). The plaintiff bears the burden of persuasion in contesting the regulation. Turner, 482 U.S. at 74.

In attempting to accommodate the religious beliefs of varying faith groups in compliance with the Free Exercise Clause, prison officials must operate within a zone of "reasonableness."

9

Brown v. Collier, 929 F.3d 218, 244 (5th Cir. 2019), as revised, (July 5, 2019). For purposes of the First Amendment, "[t]he pertinent question is not whether plaintiffs have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates the opportunities to exercise their faith." Hudson, 2018 WL 2046094, at *3. For example, in Hudson, the court found no First Amendment violation arising from prison regulations permitting Islamic worship but limiting congregant worship due to security concerns, the limited availability of the part-time chaplain and limited space. Id. at *3 ("[T]he First Amendment does not require that plaintiffs be afforded their preferred alternatives so long as they are afforded sufficient means to practice their religion."). Similarly, in Firewalker-Fields v. Lee, Case No. 7:17-cv-00400, 2019 WL 4783112, at *7 (W.D. Va. Sept. 30, 2019), the court found no First Amendment violation in the lack of group-based Muslim services due to the prison's reasonable policies requiring a leader who is not an inmate and the lack of volunteers to lead. And on the other side of the ledger, in Knapp v. Kench, Civil No. 11-cv-491-PB, 2012 WL 2061701, at *2-3 (D.N.H. May 14, 2012), approved, No. 11-CV-491-PB, 2012 WL 2061598 (D.N.H. June 6, 2012), the court found that the pleading stated a First Amendment claim in reliance on the allegation that prison officials had done nothing to remedy the Muslim prisoner's lack of access to services, which had not been held at all from 2009 until the filing of the complaint in 2012.

Measured against this standard, the FAC falls short.

The FAC's request for money damages fails because it essentially alleges that, during the period in issue, RIDOC officials and the Imam were working on accommodations to address all of Plaintiff's religious concerns; these accommodations – as Plaintiff describes them – appear more than sufficient to meet First Amendment standards. Moffat v. Dep't of Corr., CIVIL ACTION NO. 14-10082-RWZ, 2015 WL 4270161, at *4 (D. Mass. July 13, 2015) (dismissing

10

complaint that alleged prison officials accommodated religious observation with limitations based on institutional concerns). Relatedly, Defendants' invocation of Fed. R. Civ. P. 8(a)(2) resonates. The FAC is loaded with religious doctrine and does not tell Defendants what they have done wrong. Instead, on its face, the FAC recites that the RIDOC officials who are sued in their individual capacities for money damages were actually working diligently (a) to solve the problem caused by the departure of the former Imam, (b) to find a new Imam, (c) to get services reinstated and (d) to set up Ramadaan protocols based on input from the new Imam. The FAC lacks a factually grounded causal connection showing Defendants Ansari, Weiner and Aceto implemented a constitutionally deficient policy that was the moving force behind a constitutional deprivation. Therefore, the First Amendment claims against those Defendants in their individual capacities must be dismissed. See Freeman v. Davis, CIVIL ACTION NO. 6:17cv546, 2018 WL 5306661, at *9 (E.D. Tex. June 26, 2018), adopted, CIVIL ACTION NO. 6:17cv546, 2018 WL 4241776 (E.D. Tex. Sept. 5, 2018).

To the extent that it seeks injunctive relief, the FAC challenges two specific RIDOC protocols. First, it asks the Court to focus on RIDOC's refusal to allow inmate-led services when the Imam or a community volunteer is not available. Many courts have reviewed such a regulation. When measured under the First Amendment, it is consistently upheld as a reasonable accommodation of religious practice and institutional concerns. See, e.g., Brown, 929 F.3d at 240 (no First Amendment violation for prison officials to require weekly Islamic services to be led under direct supervision of chaplain or outside volunteer and not by inmates); Baranowski v. Hart, 486 F.3d 112, 121 (5th Cir. 2007) (prison policy prohibiting inmates from leading religious services without assistance of rabbi or approved outside volunteer was logically connected to penological concerns of security, staff and space limitations); Firewalker-Fields, 2019 WL

11

4783112, at *7 (no First Amendment violation in lack of group-based Muslim services due to reasonable policy requiring leader who is not inmate ). I agree; I find that RIDOC's ban on inmate-led religious services does not transgress Plaintiff's Free Exercise rights under the First Amendment

Second, the FAC draws attention to RIDOC's policy prohibiting the performance of "Salatul Maghrib" (the ritual sunset prayer with prostrations) in the dining hall prior to the congregate meal during Ramadaan – while the policy permitted Plaintiff to pray at the table and carry his meal to his cell to privately perform "Salatul Maghrib." No case was found holding that a similar limitation transgresses the First Amendment. See, e.g., Thompson v. Holm, 809 F.3d 376, 378, 380-81 (7th Cir. 2016) (where prison accommodated Ramadaan fast by providing "meal bags" at sunset to each Muslim prisoner listed as eligible, First Amendment claim viable only when prison officials persisted in refusal to provide meal bag based on insufficiently supported reasons); Payne v. Doe, 636 F. App'x 120, 124 (3d Cir. 2016) (alternatives for Ramadan offered by defendants sufficient to accommodate plaintiff's religious practices under First Amendment); DeJesus v. Bradt, 174 F. Supp. 3d 777, 787 (W.D.N.Y. 2016) (rejecting claim of First Amendment deprivation where prison accommodated need to have meal in cell after sundown). I find Plaintiff's claim in the FAC based on RIDOC's requirement that the "Salatul Maghrib" be performed in the cell is insufficient to state a First Amendment violation against the official capacity Defendants.

Finally, while not essential to the decision (because the FAC itself fails to state a claim), in considering the claim for injunctive relief against the official capacity Defendants, the Court may take judicial notice of Plaintiff's candid and appropriate representation in withdrawing the motion for preliminary injunction. See Fed. R. Evid. 201; Mangiafico v. Blumenthal, 471 F.3d

391, 398 (2d Cir. 2006) (court may take judicial notice of docket sheet as background material in Fed. R. Civ. P. 12(b)(6) analysis). This representation makes plain that RIDOC's approach to religious accommodation has evolved to the point that Plaintiff acknowledges an injunction is not necessary. This provides background support for finding that the official capacity claims are insufficient and must be dismissed.

Based on the foregoing, I find that the FAC fails to state a claim of a First Amendment deprivation and the FAC lacks sufficient clarity to gives any Defendant fair notice of what the claim is and the grounds on which it now rests. Accordingly, I recommend that the FAC be dismissed.

## V. CONCLUSION

Based on the foregoing, I recommend that Defendants' Motion to Dismiss (ECF No. 37) be granted pursuant to Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim because of the absence of plausible facts establishing the intentional and unreasonable infliction of a substantial burden on Plaintiff's religious practice.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 4, 2019